UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #:_____                       │
│ DATE FILED: 3/10/2020                │
└─────────────────────────────────────┘
```

PEDRO SAENZ,

               Plaintiff,

    -against-

S.W. MANAGEMENT, LLC., et al.,

             Defendants.

1:19-CV-5717 (BCM)

**ORDER**

**BARBARA MOSES, United States Magistrate Judge**.

The Court has received and reviewed the parties' joint letter-motion dated February 18, 2020 (Joint Ltr.) (Dkt. No. 40), seeking approval of their proposed Settlement Agreement and Release (Agreement) (Dkt. No. 40-1) pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). After careful review, the Court finds that the economic terms of the Agreement are fair and reasonable as required by *Cheeks*. However, the Court cannot approve its overbroad release provisions, and for that reason will deny the motion.

## Background

Plaintiff Pedro Saenz brought this action on June 19, 2019, alleging that defendants S.W. Management LLC and 5-7 1/2 Jane Street LLC violated the Fair Labor Standards Act (FLSA) and the New York Labor Law (NYLL) by failing to pay him time and a half for his overtime hours as a live-in handyman at a building in Manhattan, and violated the NYLL by failing to provide proper wage statements and notices. *See* Compl. (Dkt. No. 1) ¶¶ 13-35. After a court-ordered mediation on October 16, 2019, the parties reached a settlement on all issues. (Dkt. No. 25.)

On December 2, 2019, plaintiff sought approval from the assigned district judge for what his counsel characterized as the parties' agreed-upon settlement. (Dkt. No. 28.) Defendants opposed the motion, arguing that the written settlement agreement submitted by plaintiff (and signed only by plaintiff) was not final and did not accurately reflect the parties' agreement. (Dkt.

No. 29.) On December 23, 2019, the district judge ordered the parties to brief the dispute. (Dkt. No. 31.) On January 6, 2020, the parties reported that they had "resolved their differences" (Dkt. No. 32), and on January 10, 2020, they consented to disposition of all remaining proceedings by the assigned magistrate judge. (Dkt. No. 34.)

By Order dated January 13, 2020 (Dkt. No. 35), I directed the parties to submit a fully-executed agreement together with a joint letter setting forth their views as to why it was "fair and reasonable and should be approved in light of the factors enumerated in *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012)." *Id.* ¶ 1. On January 27, 2020, plaintiff submitted the parties' fully-executed Agreement under cover of a letter that addressed counsel's fee application in detail but otherwise failed to comply with ¶ 1 of my January 13 Order. (Dkt. No. 38.) On February 12, 2020, I directed the parties to update their submission. (Dkt. No. 39.) Noting that the Agreement contained a broad general release that appeared to extend not only to defendants but also to a long list of "presently or formerly related" persons and entities, I reminded the parties that "courts in this District ordinarily refuse to approve FLSA settlements that include one-way or overbroad general releases," and invited them to address the issue in their updated letter. *Id.* On February 18, 2020, plaintiff resubmitted the Agreement under cover of an expanded letter addressing all of the *Wolinsky* factors. Joint Ltr. at 1-4.[1]

## Analysis

The Agreement requires defendants to pay plaintiff $32,558 in full settlement of his claims. Ag. ¶ 2. Of this amount, $11,206 will be paid to plaintiff's counsel in attorney's fees and costs, leaving $21,352 for plaintiff himself, with both payments to be made 30 days after the Court's

---

[1] The letter is signed only by plaintiff's counsel but is copied to defendants' counsel, and contains a section labeled "Defendants' Position on the General Release." Joint Ltr. at 3. The Court therefore construes the letter as jointly submitted.

approval of the Agreement. *Id.* ¶¶ 2(a)-(c); Joint Ltr. at 2. Defendants have also agreed to dismiss their housing court action against Saenz, who allegedly remained in his employer-provided apartment, without payment, for five months after the termination of his employment. Joint Ltr. at 3. The Agreement does not contain any confidentiality clause, non-disparagement provision, or severability clause.

The Agreement contains two release provisions. In ¶ 2(f), defendants release plaintiff of and from "any and all claims, whether known or unknown, they had, have, or may have against Plaintiff, as of the date of this Agreement." Plaintiff, in turn, releases defendants "from any and all claims (to the broadest extent permitted by law)." *Id.* Separately, in ¶ 4 (titled "Release of Claims by Plaintiff"), plaintiff:

> knowingly and voluntarily releases and forever discharges Defendants (and all of their presently or formerly related parents, subsidiaries, or other affiliated persons or entities, investors, insurers, shareholders, successors, assigns, counsel, administrators, heirs, creditors, debtors, executors, officers, members, partners, agents, fiduciaries, representatives, and past or present employees of any such entity, and any otherwise related persons or entities, collectively Releasees) of any from any and all claims, whether known or unknown, he had, has, or may have against Defendants as of the date of this Agreement . . . .

Ag. ¶ 4.

After careful review, the Court finds that the economic terms of the Agreement are fair and reasonable, as required by *Cheeks*. The release provisions are not.

As this Court has previously held, "broad, general releases may be permissible in non-class FLSA cases if, among other things, the plaintiffs no longer work for the defendants and the releases are mutual." *Garcia v. Good for Life by 81, Inc.*, 2018 WL 3559171, at *3 (S.D.N.Y. July 12, 2018) (collecting cases). Here, as in *Garcia*, the releases are "mutual to the extent that both sides release and waive all of their claims against one another, whether or not asserted in this action, arising on or before the date the parties executed the Agreement." *Id.* at *4. However, they are "not

mutual in terms of their breadth or extent," because defendants' release protects only the individual plaintiff, while plaintiff's release, as set forth in ¶ 4 of the Agreement, purportedly includes not only the named defendants but a long list of persons or entities presently or formerly "related" to them in some way. *Id.* "As written, the wording of [¶ 4] is both vague and overbroad." *Id.*[2] It is vague because neither plaintiff nor any other reader of the Agreement can be expected to understand who or what an "otherwise affiliated" or "otherwise related" person or entity might be. It is overbroad because, as written, it extends to numerous persons and entities only tenuously connected to the corporate defendants, and purports to release them not only from claims arising out of that connection but also from wholly unrelated claims. For example, the language of ¶ 4, if read literally, could be used to bar personal injury claims arising out of an automobile accident between plaintiff and a motorist who happened to have once been employed by a tenant of one of the defendant LLCs who, in turn, was behind in her rent, making her a "debtor" of that LLC. Thus, as in *Garcia*, I cannot approve the parties' releases as written. *Id.* at \*5. *See also Lara v. Air Sea Land Shipping & Moving Inc.*, 2019 WL 6117588, at \*2 (S.D.N.Y. Nov. 18, 2019) (rejecting release that extended to the corporate defendant's "parent company, affiliates, subsidiaries, divisions, related entities, predecessors, successors, and assigns and their current and former owners, principals, members, shareholders, partners, officers, directors, trustees, managers, employees, attorneys, insurers, and agents, in their individual, representative, and business capacities"); *Pinguil v. YTF Hair Extensions Inc.*, 2018 U.S. Dist. LEXIS 26010, at \*7, 12 (S.D.N.Y. Feb. 15, 2018) (rejecting release that extended to "Defendants' insurers, their past and

---

[2] The wording of ¶ 4 is even broader than the wording of the provision disapproved in *Garcia*, which was limited to persons and entities "who Plaintiffs claim or may claim employed them" while they were working at defendants' delicatessens. 2018 WL 3559171, at \*4.

present contractors, officers, directors, attorneys, agents, servants, representatives, employees, affiliates, partners, predecessors and successors in interest and assigns").

Notwithstanding the Court's prompting (and the fact that the same law firm that represented the defendants in *Garcia* also represents defendants here), the Joint Letter fails to address the issues raised by the broad definition of "Releasees" in ¶ 4 of the Agreement. The Court presumes – as it did in *Lara* – that the goal of the parties was "more modest" than the language they used, and that their intention was that plaintiff would release defendants' parents, subsidiaries, and other commonly-released affiliates "*in their capacities as such*."  2019 WL 6117588, at *3 (emphasis in the original).  *See also Pinguil*, 2018 U.S. Dist. LEXIS 26010, at *8-9 ("The parties likely intended that plaintiffs' release of claims against those affiliates be limited to claims arising from actions taken in their respective capacities as defendants' 'insurers, [] past and present contractors, officers, directors, attorneys, agents, servants, representatives, employees, affiliates, partners, predecessors and successors in interest [and/or] assigns.'"). However, the Agreement now before me (unlike the documents presented in *Garcia*, *see* 2018 WL 3559171, at *2, *Lara*, *see* 2019 WL 6117588, at *3, and *Pinguil*, *see* 2018 U.S. Dist. LEXIS 26010, at *3) does not contain any language authorizing the Court to modify or sever clauses that cannot be approved under *Cheeks*. *See also Fisher v. SD Prot. Inc.*, 948 F.3d 593, 606 (2d Cir. 2020) (the district court's "duty to review an FLSA settlement for reasonableness" does not include the inherent authority "to rewrite contract provisions it finds objectionable"). Consequently, the parties' letter-motion for approval of the Agreement will be denied, with leave to resubmit a revised Agreement, resolving the overbreadth issue described above, within the next 30 days.

There are several different approaches that the parties may wish to explore in order to resolve that overbreadth issue. They could, for example, excise ¶ 4 from the Agreement entirely,

5

relying on the leaner language of ¶ 2(f) to provide each party with a general release from each opposing party. Alternatively, they could limit the list of "Releasees" in ¶ 4 by (i) omitting the references to "otherwise affiliated persons or entities," "creditors," "debtors," and "any otherwise related persons or entities," and (ii) adding language making it clear that the release "extend[s] only to persons or entities acting on behalf of or in privity with defendants themselves, and as to such persons or entities must be limited to claims arising from actions taken in their capacity as such." *Pinguil*, 2018 U.S. Dist. LEXIS 26010, at *9; *see also Lara* 2019 WL 6117588, at *3 (modifying language to limit release to defendants and their "employees, attorneys, insurers, and agents, in their representative capacities").

### Conclusion

The letter-motion for approval of the Agreement (Dkt. No. 40) is DENIED. The parties may submit a revised Agreement (or addendum thereto), executed by all parties, under cover of a renewed letter-motion for approval, on or before **April 9, 2020**.

Dated: New York, New York
       March 10, 2020

SO ORDERED.

**BARBARA MOSES**
**United States Magistrate Judge**

6